IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

LISA YAZZIE *et al.*,

    Plaintiffs,

v.                                                                  Civ. No. 16-1085 KK/LF

GOVERNMENT EMPLOYEES INSURANCE
COMPANY *et al.,*

    Defendants.

**ORDER DENYING MOTION TO BIFURCATE AND MOTIONS TO DISMISS**

THIS MATTER comes before the Court on: (1) Defendant Government Employees Insurance Company's ("GEICO") Motion to Bifurcate and Stay Plaintiffs' Extra-Contractual Claims (Doc. 23) ("Motion to Bifurcate"), filed December 2, 2016; (2) Defendant Michal Ellis' Motion to Dismiss (Doc. 36), filed January 3, 2017; (3) Defendant Darcell Elmore's Motion to Dismiss (Doc. 42), filed January 12, 2017; and, (4) Defendant Michal Ellis' Second Motion to Dismiss (Doc. 60), filed January 31, 2017. The Court, having reviewed the parties' submissions and the relevant law, and being otherwise fully advised, FINDS that the Motion to Bifurcate is not well taken at this time and should be DENIED WITHOUT PREJUDICE, and that the motions to dismiss are not well taken and should be DENIED.

**I.**     **Defendant GEICO's Motion to Bifurcate**

    A.     <u>Factual Background and Procedural History</u>

Plaintiffs Lisa and Ernest Yazzie filed this action in the First Judicial District Court for the State of New Mexico on August 10, 2016, and filed an amended complaint in that forum on September 27, 2016. (Doc. 1 at 7; Doc. 10 at 3.) In their amended complaint, Plaintiffs allege that, on or about January 17, 2015, an unidentified driver operating an uninsured vehicle owned

by Patricia Brown negligently caused an automobile accident that injured them. (Doc. 1 at 9; Doc. 29 at 1.) According to Plaintiffs, the driver of Ms. Brown's vehicle "crossed the center-line, struck the Yazzie[s'] vehicle[,] . . . fled the scene of the crash," and was intoxicated. (Doc. 29 at 1.)

At the time of the accident, Plaintiffs were named insureds on an uninsured motorist ("UM")/underinsured motorist ("UIM") policy issued by Defendant GEICO. (Doc. 1 at 9; Doc. 2 at 4.) Plaintiffs allege that, on January 13, 2016, they made a written claim for payment of UM benefits under the policy as a result of the accident, but that Defendant GEICO, acting through its employees Defendants Ellis and Elmore, rejected the claim on January 25, 2016. (Doc. 1 at 11.) Plaintiffs contend that, in the course of handling their claim, Defendants breached Defendant GEICO's insurance contract with Plaintiffs as well as the implied covenant of good faith and fair dealing, and committed fraud, misrepresentation, malicious abuse of process, and willful violations of the "Insurance Trade Practices and Frauds Act" and the "Unfair Claims Practices Act." (*Id.* at 13-16.) In particular, Plaintiffs claim that Defendants "chose not to investigate and process Plaintiffs['] claim in a timely manner," "misrepresent[ed]" the nature of Plaintiffs' coverage, and refused to pay Plaintiffs benefits for which Defendant GEICO's liability could not reasonably be disputed. (*Id.* at 10-11.)

Defendant GEICO removed the case to this Court on September 30, 2016, and filed its Motion to Bifurcate on December 2, 2016. (Docs. 1, 23.) In the Motion to Bifurcate, Defendant GEICO asks the Court to stay discovery regarding, and bifurcate the trial of, Plaintiffs' extra-contractual claims pending resolution of their breach of contract claims. (Doc. 23 at 9.) Plaintiffs filed a response in opposition to the motion on December 16, 2016, and Defendant GEICO filed a reply in support of it on December 29, 2016. (Docs. 29, 32.)

B. <u>Legal Standards</u>

A district court's discretion in deciding whether to sever issues for trial is "broad" and "considerable." *United States ex rel. Bahrani v. ConAgra, Inc.*, 624 F.3d 1275, 1283 (10th Cir. 2010) (quoting *Anaeme v. Diagnostek, Inc.*, 164 F.3d 1275, 1285 (10th Cir. 1999)); *Angelo v. Armstrong World Indus.*, 11 F.3d 957, 964 (10th Cir. 1993). Federal Rule of Civil Procedure 42, which governs bifurcation in federal civil actions, permits the Court to order a separate trial of any claim or issue "[f]or convenience, to avoid prejudice, or to expedite and economize." Fed. R. Civ. P. 42(b). "Bifurcation is not an abuse of discretion if such interests favor separation of issues and the issues are clearly separable." *Angelo*, 11 F.3d at 964.

"Regardless of efficiency and separability, however, bifurcation is an abuse of discretion if it is unfair or prejudicial to a party." *Id.* Moreover, bifurcation is to be decided "on a case-by-case basis" and should not be regarded as "routine." *Marshall v. Overhead Door Corp.*, 131 F.R.D. 94, 97-98 (E.D. Pa. 1990). Bifurcation under Rule 42(b) is inappropriate when it will "not appreciably shorten the trial or [a]ffect the evidence offered by the parties" because claims are inextricably linked. *F.D.I.C. v. Refco Group, Ltd.*, 184 F.R.D. 623, 629 (D. Colo. 1999). The party seeking bifurcation bears the burden of proving that it is proper "in light of the general principle that a single trial tends to lessen the delay, expense, and inconvenience." *Belisle v. BNSF Ry. Co.*, 697 F. Supp. 2d 1233, 1250 (D. Kan. 2010).

The Court also has broad discretion to stay proceedings incident to its power to manage its docket. *Clinton v. Jones*, 520 U.S. 681, 706 (1997); *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1310 (10th Cir. 2010). In addition, the Court may stay discovery pursuant to Federal Rule of Civil Procedure 26(c), which for good cause shown allows the Court to limit discovery to protect a party from "annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ.

P. 26(c); *Nankivil v. Lockheed Martin Corp.*, 216 F.R.D. 689, 692 (M.D. Fla. 2003); *Johnson v. N.Y. Univ. Sch. of Educ.*, 205 F.R.D. 433, 434 (S.D.N.Y. 2002).  The party seeking a stay bears the burden of establishing the need for it.  *Clinton*, 520 U.S. at 708.

    C.    <u>Analysis</u>

In its Motion to Bifurcate, Defendant GEICO asks the Court to stay discovery regarding, and bifurcate the trial of, Plaintiffs' extra-contractual claims pending resolution of their breach of contract claims.  (Docs. 23 at 9; Doc. 32 at 11.)  Defendant GEICO first argues that it has a right to litigate Plaintiffs' contractual claims, presenting any coverage defenses as well as any defenses the UM would have had, before Plaintiffs' extra-contractual claims can proceed.  (Doc. 23 at 3-5; Doc. 32 at 1-5.)  According to Defendant GEICO, Plaintiffs must establish both the fact and amount of its contractual liability before they can pursue their extra-contractual claims.  (Doc. 23 at 3-5.)  In support of this argument, Defendant GEICO contends that it is obligated to pay benefits under Plaintiffs' UM/UIM policy only if Plaintiffs are "legally entitled to recover" damages from the UM.[1]  (*Id.* at 3; Doc. 32 at 5.)  Although Defendant GEICO acknowledges that "the dispute between the Plaintiffs and Defendant lies primarily with the value of their claims," it insists that "Plaintiffs must first establish they are legally entitled to recover damages from the UM," *and* the amount of those damages, "*before* attempting to establish liability for their bad faith allegations."  (Doc. 32 at 5 (emphasis in original).)

---

[1] As the source of this standard, Defendant GEICO cites to *Ortiz v. Safeco Insurance Co. of America*, which in turn cites to Section 66-5-301(A) of the New Mexico Statutes Annotated. (Doc. 32 at 5); 207 F. Supp. 3d 1216, 1219 (D.N.M. 2016).  Neither Defendant GEICO nor Plaintiffs cite to or attach the relevant portions of the UM/UIM policy Defendant issued to Plaintiffs.  (*See generally* Docs. 23, 29, 32.)  To the extent the policy's terms provide for coverage broader than New Mexico law requires, those terms, rather than Section 66-5-301(A), would seem to govern Defendant GEICO's obligation to pay Plaintiffs' UM claims.  *Essex Ins. Co. v. Vincent*, 52 F.3d 894, 896 (10th Cir. 1995).  However, because neither party has cited to or attached the policy, the Court will presume that its terms follow Section 66-5-301(A) for purposes of Defendant GEICO's Motion to Bifurcate.

4

In the particular circumstances of this case, the Court disagrees. As the court in *Willis v. Government Employees Insurance Co.* observed,

> New Mexico statutory law on UM/UIM coverage simply requires "the insured be legally entitled to recover damages and that the negligent driver be uninsured" or underinsured. *Farmers Ins. Co. of Arizona v. Sandoval*, 2011-NMCA-051, ¶ 7, 149 N.M. 654, 657, 253 P.3d 944, 947 (citing *Schmick v. State Farm Mut. Auto. Ins. Co.*, 1985-NMSC-073, ¶ 11, 103 N.M. 216 (1985)). Neither New Mexico statutes nor caselaw require the establishment of the amount of damages before an insured can be considered legally entitled to recover damages at all. An insured, therefore, can be legally entitled to recover damages even if the exact amount of damages is not yet determined. . . . GEICO has failed to convince the Court that a determination of damages is a condition precedent to the bad faith claims.

2015 WL 11181339, at *4 (D.N.M. Jun. 17, 2015). A contrary case on which Defendant GEICO relies, *i.e.*, *Aragon v. Allstate Insurance Co.*, 185 F. Supp. 3d 1281 (D.N.M. 2016), is plainly distinguishable. In *Aragon*, the plaintiff's claim was for UIM benefits; and, to recover UIM benefits, a plaintiff must prove, *inter alia*, "damages that exceed the tortfeasor's liability limits." *Id.* at 1283. Obviously, however, when a plaintiff seeks to recover UM benefits, that requirement makes no sense; even the most minimal damages will exceed the amount the plaintiff could collect from the uninsured tortfeasor's non-existent liability insurance. *Ortiz*, 207 F. Supp. 3d at 1220.

Defendant also relies on *Hovet v. Allstate Insurance Co.*, 2004-NMSC-010, ¶¶ 22-23, 135 N.M. 397, 89 P.3d 69, in which the New Mexico Supreme Court held that a third-party claimant[2] has a right to sue an insurer for unfair settlement practices under Sections 59A-16-20(E) and 59A-16-30 of the New Mexico Statutes Annotated. (Doc. 32 at 8-9.) The *Hovet* court imposed "certain preconditions" on such a suit, however:

---

[2] As used in this Order, the term "third-party claimant" refers to the alleged victim of an accident who sues the automobile liability insurer of the alleged tortfeasor who caused the accident. *See, e.g.*, *Hendren v. Allstate Ins. Co.*, 1983-NMCA-129, ¶ 18, 100 N.M. 506, 672 P.2d 1137. The term "first-party claimant," in contrast, refers to an alleged accident victim who makes a claim under her own automobile liability insurance policy. *See, e.g.*, *Willis*, 2015 WL 11181339, at *4.

> [a] third-party claimant's statutory cause of action against the insurer for unfair settlement practices must await the conclusion of the underlying negligence action between the claimant and the insured. Thus, a third-party claimant may not sue both the insured and the insurer in the same lawsuit. Not only that, the third-party claimant will not even have an action under Section 59A-16-20(E) unless and until there has been a judicial determination of the insured's fault and the amount of damages awarded in the underlying negligence action.

2004-NMSC-010 at ¶¶ 23, 26, 135 N.M. 397, 89 P.3d 69 (internal citation omitted).

The Court finds this case distinguishable from *Hovet* in three significant ways. First, the extra-contractual claims alleged in Plaintiffs' amended complaint are not limited to claims based on Defendant GEICO's alleged bad faith refusal to settle. (*See, e.g.*, Doc. 1 at 10-11.) In that respect, this case is like *Willis*, in which the court denied Defendant GEICO's motion to bifurcate and stay discovery. 2015 WL 11181339, at *5. In *Willis*, Defendant GEICO argued that a determination of the plaintiffs' contractual damages was necessary before their bad faith claims could proceed. *Id.* at *3. The *Willis* court rejected that argument, noting that

> [a]n insurer in New Mexico can act in bad faith in its handling of a claim for reasons other than its refusal to pay a claim in full. Here, Plaintiffs' bad faith claims concerning quality or quantity of services, untimeliness, and dishonesty are for reasons other than GEICO's refusal to pay Plaintiffs' claim in full. Those bad faith claims are distinct and independent from Plaintiffs' claim that GEICO refused to pay Plaintiffs' claim in full, the basis for Plaintiffs' contract claims. Accordingly, the bad faith claims are not contingent on the contract claims. GEICO has, therefore, failed to demonstrate that bifurcation is warranted for that reason.

*Id.* (internal citations and quotation marks omitted).

As in *Willis*, Plaintiffs in this case have asserted extra-contractual claims regarding "quality or quantity of services, untimeliness, and dishonesty," *i.e.*, "for reasons other than [Defendant] GEICO's refusal to pay Plaintiffs' claims in full," *id.*, and these claims are not contingent on the outcome of their contractual claims. (Doc. 1 at 10-11.) Thus, as in *Willis*, bifurcation is not warranted for that reason at this time. *Cf. Ortiz*, 207 F. Supp. 3d at 1220-21

6

(disregarding insured's conclusory allegations of misconduct other than bad faith refusal to settle in granting insurer's motion to bifurcate).

Second, the Court finds *Hovet* distinguishable because, at least at this juncture, Defendant GEICO has failed to identify any actual dispute regarding the UM's liability for the accident at issue. The *Ortiz* case is likewise distinguishable for this reason. 207 F. Supp. 3d at 1218. Plaintiffs assert "[t]here is no real dispute that [they] are owed benefits" under the UM policy, and, as noted above, even Defendant GEICO acknowledges that "the dispute between the [parties] lies primarily with the value of their claims." (Doc. 29 at 8; Doc. 32 at 5.) Moreover, although Defendant GEICO contends that Plaintiffs must "establish[] fault on the part of the uninsured driver," (Doc. 32 at 1), at no time in its briefs on bifurcation has it identified any reason to question the UM's fault, or to otherwise challenge Plaintiffs' description of the accident. (*See generally* Docs. 23, 32.) Defendant bears the burden of demonstrating that bifurcation is proper, and at this stage of the litigation has failed to carry that burden. *Belisle*, 697 F. Supp. 2d at 1250. As in *Willis*, the Court presently sees "no risk of simultaneous litigation on the issue of underlying negligence," and bifurcation is not warranted for that reason. 2015 WL 11181339, at *4.

Finally, the Court finds *Hovet* distinguishable because *Hovet* involved a third-party claimant, whereas here, Plaintiffs are first-party claimants bringing bad faith claims against their own insurer.[3] The holding in *Hovet* was explicitly limited to third-party bad faith claims. 2004-

---

[3] The Court notes that "the legislative purpose in creating compulsory uninsured motorist coverage was to place the injured policyholder in the same position, with regard to the recovery of damages, that he would have been in if the tortfeasor had possessed liability insurance." *Boradiansky v. State Farm Mut. Auto. Ins. Co.*, 2007-NMSC-015, ¶ 8, 141 N.M. 387, 156 P.3d 25. Nevertheless, the special relationship between an insurer and its insured dictates that a first-party insured seeking to recover under a UM/UIM policy is in a position analogous, but not identical, to that of a third-party claimant seeking to recover under a tortfeasor's liability policy. *See, e.g., Grasshopper Natural Med., LLC v. Hartford Cas. Ins. Co.*, 2016 WL 4009834, at *30–*33 (D.N.M. Jul. 7, 2016) (discussing nature of relationship between insurer and insured); *see also State Farm Mut. Auto. Ins. Co. v. Barker*, 2004-NMCA-105, ¶ 13, 136 N.M. 211, 96 P.3d 336 (New Mexico's public policy is to "provide protection from uninsured drivers by

NMSC-010, ¶ 26, 135 N.M. 397, 89 P.3d 69.  Its concern about a third-party claimant attempting to "sue both the insured and insurer in the same lawsuit," and the "potential confusion" that might arise in such a situation, is simply not an issue here.  *Id.* at ¶¶ 25-26.

Finally, Defendant GEICO cites to *Barker*, 2004-NMCA-105, 136 N.M. 211, 96 P.3d 336, to support its argument that Plaintiffs must first prove the amount of the damages they are entitled to recover from the UM, before they can pursue their extra-contractual claims. (Doc. 23 at 4; Doc. 32 at 3.)  However, the Court concludes that *Barker*, like *Aragon*, *Ortiz*, and *Hovet*, is distinguishable.  In *Barker*, the parties' UM/UIM insurance policy expressly permitted the defendant insurer to arbitrate the amount of damages the insured was entitled to recover from a UM in the event the insurer and insured could not agree.  2004-NMCA-105, at ¶¶ 11-12, 136 N.M. 211, 96 P.3d 336.  The *Barker* court held that, because the insurer "did not breach its contract by following [the contract's] terms . . . and arbitrating the issue of damages," the insured was not entitled to prejudgment interest under Section 56-8-3 of the New Mexico Statutes Annotated.  *Id.* at ¶¶ 12, 21; *see id.* at ¶ 19 ("Section 56-8-3(A) requires that a contract be breached before an award of prejudgment interest can be considered.").  Here, in contrast, Defendant GEICO has presented no evidence that the terms of Plaintiffs' UM/UIM policy authorized it to handle Plaintiffs' claims as it allegedly has; and, of course, at this time, there is no issue regarding Defendant GEICO's entitlement to prejudgment interest.  As such, *Barker* is inapposite.

Defendant GEICO also argues that bifurcation and stay of Plaintiffs' extra-contractual claims would promote convenience and judicial efficiency.  (Doc. 23 at 5-8; Doc. 32 at 8-10.)  However, the Court does not share Defendant's view that bifurcation is likely to result in a more

---

placing injured parties in the same *or similar* position they would have been in had they been dealing with a person with liability insurance" (emphasis added)).

expeditious resolution of this case.  Bifurcation is not mandated simply because determination of the coverage issue could dispose of some part of Plaintiffs' extra-contractual claims.  As noted above, bifurcation under Rule 42(b) is inappropriate when it will not appreciably shorten trial or affect the evidence offered because claims are inextricably linked.  *Refco Group, Ltd.*, 184 F.R.D. at 629.  At this stage of the proceedings, the facts relevant to Plaintiffs' contractual and extra-contractual claims appear intertwined enough to permit discovery and trial of all the claims together.  For example, evidence regarding Defendant GEICO's reasons for refusing to pay Plaintiffs' UM claims as requested appears centrally relevant to both their coverage and bad faith claims, and would have to be presented at two separate trials if the claims were bifurcated and Plaintiffs were successful on their coverage claims.  Also, Plaintiffs and the individual Defendants will likely need to be deposed, and a substantial portion of each deposition will likely be relevant to both the contractual and the extra-contractual claims.

In short, based on the record now before the Court, bifurcation of, and a stay of discovery regarding, Plaintiffs' extra-contractual claims would not result in a substantial savings of the Court's and the parties' resources, and, in the event a jury finds for Plaintiffs on their contractual claims, would significantly delay the ultimate resolution of the case, require the Court to empanel two separate juries, and require witnesses to testify at two separate trials.  Moreover, to the extent Plaintiffs' discovery regarding their extra-contractual claims is excessively "consuming and invasive" or seeks privileged or confidential information as Defendant GEICO claims, (Doc. 23 at 6), Federal Rule of Civil Procedure 26 provides it with ample means to protect its interests.

Defendant GEICO also claims that bifurcation is necessary to avoid unfair prejudice to it.  (Doc. 23 at 6-7); *see Oulds v. Principal Mut. Life Ins. Co.*, 6 F.3d 1431, 1435 (10th Cir. 1993)

(district court, citing need to avoid potential prejudice to defendant, did not abuse its discretion in bifurcating claims). According to Defendant GEICO, it would be "unfairly prejudiced at trial by potential jury confusion over the mixed presentation of evidence regarding claims of bad faith and claims regarding liability and damages for the underlying UIM [sic] claim." (Doc. 23 at 6.) Defendant GEICO also contends that if the Court tries Plaintiffs' contractual and extra-contractual claims together, there will be a conflict between Plaintiffs' right to present evidence of Defendant GEICO's settlement offers to show bad faith, and Defendant GEICO's right to exclude such evidence to avoid the appearance of having conceded liability. (*Id.* at 7); *see* Fed. R. Civ. P. 408 (evidence of compromise offers and negotiations not admissible to prove or disprove validity or amount of a disputed claim or for impeachment, but may be admitted for other purposes).

At present, the Court is disinclined to bifurcate and stay Plaintiffs' extra-contractual claims on this basis. In general, it seems likely that appropriate jury instructions and arguments of counsel can mitigate any danger of unfair prejudice to Defendant GEICO at trial.

> The Court does not find that there is a substantial risk of juror confusion or prejudice simply because the jury will consider admissible evidence regarding both the bad faith and contract claims. Jurors are often asked to comprehend issues in civil litigation that are considerably more complex than the issues in this case. Sufficiently clear jury instructions, including limiting instructions, and clear arguments by counsel will enable jurors to understand the different sets of issues presented and thereby, avoid any confusion or prejudice.

*Willis*, 2015 WL 11181339, at *4.

The Court recognizes that not all of the circumstances relevant to bifurcation are static. Thus, notwithstanding the foregoing discussion, it is possible that at a later stage in these proceedings, the Court may be persuaded to bifurcate the trial of this matter, or to phase it, for example, in a manner permitting the parties to present evidence regarding Plaintiffs' extra-

contractual claims to the jury, but only if that same jury first finds in Plaintiffs' favor on their contractual claims. As such, the Court's denial of Defendant GEICO's Motion to Bifurcate will be without prejudice to its ability to seek the same or similar relief in the future based on new information or changed circumstances. Moreover, this Order does not preclude Defendant GEICO from asking the Court to phase discovery, nor does it preclude the Court from granting such relief if proper. However, in light of the record now before it, the Court concludes that bifurcation and stay of Plaintiffs' extra-contractual claims would significantly delay the litigation and result in the discovery and presentation of duplicative evidence, and is not necessary to prevent unfair prejudice to Defendant GEICO. The Court will therefore deny Defendant GEICO's Motion to Bifurcate without prejudice at this time.

## II.     The Individual Defendants' Motions to Dismiss

### A.     Factual Background and Procedural History

On November 18, 2016, Defendants Elmore and Ellis jointly filed a motion to dismiss Plaintiffs' claims against them, alleging insufficient service of process. (Doc. 12.) The Court denied the motion as premature on December 2, 2016, finding that Plaintiffs had until December 29, 2016, to serve the individual Defendants properly. (Doc. 24 at 2.) On December 22, 2016, Plaintiffs filed a Return documenting proof of service of process on Defendant Ellis on December 13, 2016. (Doc. 30 at 2.) On January 3, 2017, however, Defendant Ellis filed a second motion to dismiss, in which she argued that the December 13 service of process was invalid because she was served with a summons issued, not by this Court, but rather by the state district court before removal. (*See generally* Doc. 36.) In their response to the motion, Plaintiffs asserted that federal law allowed them to serve Defendant Ellis with a state court summons, but, "[o]ut of an abundance of caution," they also served Defendant Ellis with a federal summons on

January 11, 2017. (Doc. 47 at 2; *see also* Doc. 45 (Proof of Service on Defendant Ellis on Jan. 11, 2017).) In reply, Defendant Ellis contended that the January 11 service of process was also invalid, because it was untimely. (Doc. 51 at 3-4.) Defendant Ellis later filed a third motion to dismiss (entitled her second), reasserting the arguments presented in her second motion, in case the January 11 service of process had mooted the second motion. (Doc. 60.)

On January 3, 2017, Plaintiffs filed a Proof of Service of process on Defendant Elmore, in which Plaintiffs' process server attested that she personally served Defendant Elmore on December 22, 2016. (Doc. 38 at 2.) On January 12, 2017, Defendant Elmore filed his second motion to dismiss, asserting that the December 22 service of process was invalid. (Doc. 42.) In his affidavit attached to the motion, Defendant Elmore attested that the process server did not serve him personally as she claimed, but rather "threw papers at [his] wife" at his residence. (Doc. 42-1 at 3.) Plaintiffs filed a response in opposition to Defendant Elmore's motion on January 26, 2017, attaching the process server's affidavit. (Doc. 54.) In her affidavit, the process server attested that she "made an error" when she previously swore that she had personally served Defendant Elmore. (Doc. 54 at 3.) In fact, she attested, she served Defendant Elmore by handing copies of the summons and complaint to Defendant Elmore's wife at his residence. (*Id.*) Also on January 26, 2017, Plaintiffs filed an Amended Proof of Service consistent with the process server's affidavit. (Doc. 53.) In reply, Defendant Elmore argued that the Court should disregard the Amended Proof of Service because it contradicts the original Proof of Service, and because Plaintiffs did not seek the Court's leave to file it. (Doc. 61.)

B. Legal Standards

According to 28 U.S.C. § 1448, in cases that have been removed from state to federal court

> in which any one or more of the defendants has not been served with process or in which the service has not been perfected prior to removal, or in which process served proves to be defective, such process or service may be completed or new process issued in the same manner as in cases originally filed [in federal court].

28 U.S.C. § 1448. Although Defendant Ellis represents as settled law that "post-removal service must be accomplished pursuant to a subpoena issued by the federal district court," (Doc. 36 at 5 (citation and internal punctuation marks omitted)), the actual state of the law is not so clear. In a case conspicuously absent from Defendant Ellis' briefs on the pending motions to dismiss, the Tenth Circuit stated:

> [t]he Ninth Circuit has held that where the plaintiff has not served the defendant with process prior to removal, the district court has no power to complete the service. Rather, the court must issue new process pursuant to Fed. R. Civ. P. 4. *Beecher v. Wallace*, 381 F.2d 372, 373 (9th Cir. 1967). *This court has yet to rule on that precise question, and there is no need to do so here.*

*Wallace v. Microsoft Corp.*, 596 F.3d 703, 707 (10th Cir. 2010) (emphasis added). In other words, the Tenth Circuit has not yet decided whether a plaintiff may serve a defendant with a state court summons after removal to federal court. *Id.* Moreover,

> there is a conflict of authority on the issue whether state process issued but not served prior to removal retains any efficiency for further service after removal, and as many or more courts have rejected *Beecher*'s interpretation of § 1448 and held that the statute allows service of process to be completed under state law where process was issued but not served prior to removal.

*Minter v. Showcase Sys., Inc.*, 641 F. Supp. 2d 597, 600 (S.D. Miss. 2009); *see also Spiritbank v. McCarty*, 2009 WL 1158747, at *1-*2 (N.D. Okla. Apr. 22, 2009) (citing cases). As one such court reasoned, "Section 1448 allows for the completion of state service of process if the process

13

was commenced prior to the date of removal," and "service of process commence[s]" when the state court summons is issued. *Schmude v. Sheahan*, 214 F.R.D. 487, 490 (N.D. Ill. 2003).

When a summons and complaint have not been timely served, courts "employ[] a two-step analysis for determining whether an extension of time should be granted." *Salazar v. City of Albuquerque*, 278 F.R.D. 623, 627 (D.N.M. 2011). "First, the plaintiff is entitled to a mandatory extension of time if the plaintiff can demonstrate good cause for failing to timely effect service." *Id.* (citing *Espinoza v. United States*, 52 F.3d 838, 841 (10th Cir. 1995)). In this context, "good cause" is construed "narrowly to protect only those plaintiffs who have been meticulous in their efforts to comply with the Rule." *Id.* (quoting *Despain v. Salt Lake Area Metro Gang Unit*, 13 F.3d 1436, 1438 (10th Cir. 1994)). "Second, if the plaintiff fails to show good cause, the court still must exercise its discretion, and either dismiss the case without prejudice or extend the time for service." *Id.* (quoting *Espinoza*, 52 F.3d at 842). Courts consider a number of factors in determining whether to grant a discretionary extension of time for service, including whether

> (1) the plaintiff intentionally delayed serving process; (2) the plaintiff was dilatory in his effort to serve process; (3) the defendant revealed the defect in service to the plaintiff; (4) dismissal of the case would be a severe sanction against the plaintiff; (5) judicial economy would be served by dismissing claims; (6) the defendant would be prejudiced from delayed service of process; (7) the defendant had actual notice of the lawsuit; and (8) the plaintiff's mistake . . . is understandable.

*Willis v. Gov't Employees Ins. Co.*, 2016 WL 3951730, at *3 (D.N.M. Feb. 8, 2016). "In analyzing the above factors, the Court considers the strong policy which prefers that courts reach the merits of a case instead of dismissing [it] on a technicality." *Id.* (citing *Baumeister v. N.M. Comm'n for the Blind*, 409 F. Supp. 2d 1351, 1353-54 (D.N.M. 2006)). Finally, Federal Rule of Civil Procedure 4 provides that "[f]ailure to prove service does not affect the validity of service. The court may permit proof of service to be amended." Fed. R. Civ. P. 4(*l*)(3).

C.  Analysis

To resolve Defendant Ellis' two pending motions to dismiss, the Court need not decide whether Plaintiffs' service of a state court summons on Defendant Ellis was proper. Also, the Court need not decide whether Plaintiffs' counsel's interpretation of Section 1448 to permit such service constitutes "good cause for failing to timely effect service." *Salazar*, 278 F.R.D. at 627. This is so because, even if such service was improper, and even if counsel's interpretation does not constitute good cause, the Court will exercise its discretion to extend the time for Plaintiffs to serve Defendant Ellis to January 11, 2017, the date on which she was undisputedly personally served with a federal summons. (Docs. 45, 47, 51.) In so holding, the Court has considered several factors. First, there is no evidence that Plaintiffs intentionally delayed in serving Defendant Ellis with process, and the record indicates that they have not been dilatory in their efforts to do so. *Willis*, 2016 WL 3951730, at *3. On the contrary, Plaintiffs have been persistently, if at times imperfectly, attempting to serve the individual Defendants with process since at least October 24, 2016, less than a month after Defendant GEICO removed the case to federal court. (Doc. 11 at 10-11.)

Second, each time Defendant Ellis filed a motion to dismiss alleging a defect in Plaintiffs' attempts to serve her, Plaintiffs acted with reasonable promptness to correct the defect. *Willis*, 2016 WL 3951730, at *3. Third, although dismissal would not be a "severe sanction," because the statutes of limitation on Plaintiffs' claims against Defendant Ellis will not expire for some time,[4] the Court finds that allowing the claims to proceed would far more effectively promote judicial economy and conserve the parties' resources. *Id.* If the Court were to dismiss

---

[4] *See, e.g.,* N.M. Stat. Ann. § 37-1-3 (six-year statute of limitation applies to claims founded on written contract); N.M. Stat. Ann. § 37-1-4 (four-year statute of limitation applies to claims of fraud); *Nance v. L.J. Dolloff Assocs., Inc.*, 2006-NMCA-012, ¶ 22, 138 N.M. 851, 126 P.3d 1215 (four-year statute of limitation applies to claims under New Mexico Unfair Insurance Practices Act and New Mexico Unfair Practices Act).

Plaintiffs' claims against Defendant Ellis without prejudice, Plaintiffs would most likely refile them. Even if they were to do so in state court, as before, Defendant Ellis would likely once again remove them to this Court. If so, consolidation, on a party's motion or *sua sponte*, seems another likely possibility. The foregoing scenario involves considerable effort, expense, and delay only to return the case to its current procedural posture. *See Freeze-Dry Prods., Inc. v. Metro Park Warehouse, Inc.*, 159 F.R.D. 45, 46 (D. Kan. 1994) (Courts "may consider practicalities in exercising [their] discretion to determine whether to dismiss. Dismissal would be relatively pointless in the instant case. It will not bar plaintiff's claim, but will simply require plaintiff to re-file and re-serve defendant.").

Fourth, the Court finds that the delayed service of a federal summons has not prejudiced Defendant Ellis. *Willis*, 2016 WL 3951730, at *3. Defendant Ellis has had actual notice of this lawsuit since at least November 18, 2016, when she and Defendant Elmore filed their first motion to dismiss, (Doc. 12); and, she was personally served with copies of the state court summons, the complaint, and Defendant GEICO's Notice of Removal on December 13, 2016, before the deadline for service of process expired. (Doc. 24 at 2; Doc. 30 at 2.) Finally, to the extent Plaintiffs' counsel were mistaken in their belief that service of a state court summons after removal was proper—again, a question the Court does not reach—such mistake was at least "understandable." *Willis*, 2016 WL 3951730, at *3; *see, e.g., Bruley v. Lincoln Prop. Co., N.C., Inc.*, 140 F.R.D. 452, 454 (D. Colo. 1991) (it was "plausible" for plaintiff to interpret Section 1448 to permit service of state court summons after removal). For all of these reasons, the Court in its discretion holds that Plaintiffs' service of process on Defendant Ellis was timely if accomplished on or before January 11, 2017, and, as such, Plaintiffs have timely and properly

served Defendant Ellis in accordance with Rule 4. The Court will therefore deny Defendant Ellis' two pending motions to dismiss.

Defendant Elmore's pending motion to dismiss also alleges insufficient service of process, but for different reasons. As a preliminary matter, Defendant Elmore contends that the Court should disregard Plaintiffs' process server's Amended Proof of Service in deciding his motion, because Rule 4 permits amendment of proof of service only with the Court's leave, which Plaintiffs have failed to seek. (Doc. 61 at 2-3.) Defendant Elmore is correct that Rule 4 requires the Court's leave for amendment of proof of service, and that Plaintiffs filed their Amended Proof of Service without seeking such leave. Fed. R. Civ. P. 4(*l*)(3). The Court cautions Plaintiffs to more carefully review and comply with the Federal Rules of Civil Procedure in their prosecution of this action in future. However, the Court is cognizant of both "the strong policy which prefers that courts reach the merits of a case instead of dismissing [it] on a technicality," *Willis*, 2016 WL 3951730, at *3, and the fact that "[f]ailure to prove service does not affect the validity of service." Fed. R. Civ. P. 4(*l*)(3). As such, the Court will, *sua sponte* and *nunc pro tunc*, permit Plaintiffs to amend their Proof of Service to reflect the manner in which Defendant Elmore was actually served.

Further, the Court is convinced that Plaintiffs' Amended Proof of Service does in fact reflect the manner which Plaintiffs' process server actually served Defendant Elmore, *i.e.*, by leaving a copy of the summons and complaint with Defendant Elmore's wife at his residence. (Doc. 53; Doc. 54 at 3-4.) The Amended Proof of Service is consistent with the process server's affidavit, in which she explains she made a mistake when she attested that she served Defendant Elmore personally, and that she in fact served him by handing an envelope containing copies of the summons and complaint to his wife at his residence. (Doc. 54 at 3.) The Amended Proof of

Service, and the process server's affidavit, are also consistent with that portion of Defendant Elmore's affidavit about which he has personal knowledge, *i.e.*, that he was not served personally.[5] (Doc. 42-1 at 3.) Moreover, in his reply in support of his motion to dismiss, Defendant Elmore had the opportunity to present his wife's affidavit to contradict the process server's affidavit, but neither did so nor explained why he did not. For these reasons, the Court finds that Plaintiffs' process server properly and timely served Defendant Elmore with process on December 22, 2016, by handing copies of the summons and complaint to Defendant Elmore's wife at his residence in compliance with Rule 4. *See* Fed. R. Civ. P. 4(e)(2)(B) (individual in the United States may be served "by leaving a copy of [the summons and complaint] at the individual's dwelling or usual place of abode with someone of suitable age and discretion[6] who resides there"). The Court will therefore deny Defendant Elmore's pending motion to dismiss.

### III. Conclusion

IT IS THEREFORE ORDERED as follows:

1. Defendant GEICO's Motion to Bifurcate and Stay Plaintiffs' Extra-Contractual Claims (Doc. 23) is DENIED WITHOUT PREJUDICE; and,

2. Defendant Michal Ellis' Motion to Dismiss (Doc. 36), Defendant Darcell Elmore's Motion to Dismiss (Doc. 42), and Defendant Michal Ellis' Second Motion to Dismiss (Doc. 60), are DENIED.

---

[5] It seems quite unlikely that Defendant Elmore has personal knowledge that the process server "threw papers at [his] wife" and left them on his doorstep, notwithstanding his sworn testimony to that effect. (Doc. 42-1 at 2-3.) According to counsel, Defendant Elmore was "in bed" at the time his wife and the process server interacted. (Doc. 42 at 3.) Before the Court could credit his testimony that he has personal knowledge of the process server's actions, it would at least need further explanation regarding how Defendant Elmore, while in his bed, could perceive what the process server was doing on the doorstep outside his house.

[6] Defendant Elmore has not disputed that his wife is a person "of suitable age and discretion who resides" at his home. (*See generally* Docs. 42, 61.)

IT IS SO ORDERED.

_____
KIRTAN KHALSA
UNITED STATES MAGISTRATE JUDGE
Presiding by Consent